IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | CASE NO. BK14-80934 |
| SKYLINE MANOR, INC., ) | |
| ) | CHAPTER 11 |
| Debtor(s). ) | |

ORDER

      Hearing was held in Lincoln, Nebraska, on November 20, 2014, on the objection by the Nebraska Department of Health & Human Services ("DHHS") (Fil. No. 398) to the Chapter 11 trustee's motion to sell substantially all of the estate's assets (Fil. No. 316). Ronald L. Sanchez appeared for DHHS, and Brandon R. Tomjack and T. Randall Wright appeared for the Chapter 11 trustee. The sale was approved by a separate order, while the issues raised in the DHHS objection were bifurcated for this separate ruling.

      The debtor operates a retirement community in Omaha, Nebraska, consisting of a continuing care facility, a skilled nursing and rehabilitation center, and a personal care center. DHHS governs the facility's ability to function as a licensed health care facility and Medicaid (known as the Nebraska Medical Assistance Program ("NMAP")) provider. Under DHHS regulations for reimbursing nursing facilities for care provided under Medicaid, depreciation is an allowable fixed cost in the per diem rate calculation. 471 Nebr. Admin. Code § 12-011.08D3. However, if a nursing facility that has received NMAP payments for depreciation is sold for profit, DHHS is allowed to recapture a portion of those payments. 471 Nebr. Admin. Code § 12-011.09E.

      The Chapter 11 trustee for Skyline seeks to sell the facility to Menomonee Health Holdings LLC. DHHS objects to the proposed sale, asserting that DHHS must be paid $373,000[1] in recaptured depreciation from the sale proceeds on the grounds that the right to recapture depreciation is not an interest in the property to be sold and therefore is not an interest that can be cleared off the property via sale under 11 U.S.C. § 363(f). In the alternative, DHHS argues that if that depreciation is not recaptured, the buyer should be assigned a lower basis cost for the facilities purchased, which is part of the calculation of per diem payments. DHHS also maintains that Skyline cannot assign its Medicaid provider agreement to Menomonee in the context of the property sale because sovereign immunity prevents the Bankruptcy Code from impinging upon state law requirements applicable to DHHS's administration of the Medicaid program and the licensing of health care facilities.

      The relevant provision of the Nebraska Administrative Code requires the depreciation recapture claim to be paid before the transfer of ownership:

---

[1] DHHS's figure is $373,122. The trustee does not agree and reserves the right to dispute that amount. For discussion purposes here, I will use DHHS's number.

<u>12-011.16 Change of Holder of Provider Agreement</u>: A holder of a provider agreement receiving payments under 471 NAC 12-011 must notify the Department 60 days before any change or termination regarding the holder of the provider agreement. If any known settlement is due the Department by that provider, payment must be made immediately. If the provider is subject to recapture of depreciation on the anticipated sale and/or if an audit is in process, the provider will be required to provide a guarantee of repayment of the Department's estimated settlement either by payment of that amount to the Department, providing evidence that another provider receiving payments under 471 NAC 12-011 has assumed liability, or by surety bond for payment. All estimated or final amounts, regardless of appeal status, must be paid before the transfer of ownership.

The Department will not enter into a provider agreement with a new provider if there is an unpaid settlement payable to the Department by a prior provider of services at the same facility unless the new provider has assumed liability for the unpaid amount. Parties to a facility provider change may receive information about unpaid settlement amounts owed to the Department by making a written request.

471 Neb. Admin. Code § 12-011.16 (2014).

The Chapter 11 trustee intends to reject Skyline's provider agreement and render the amount due to DHHS for depreciation recapture a general unsecured claim. Because DHHS will not enter into a new provider agreement with the buyer unless and until the buyer assumes liability for any unpaid amounts owed to DHHS, Menomonee will be on the hook for the $373,000 in depreciation recapture. The purchase agreement between the trustee and Menomonee escrows $500,000 of the $13 million purchase price in an indemnification fund to pay certain liabilities such as the depreciation recapture claim. Any funds remaining in the escrow account a year after the close of the sale revert to the trustee for distribution to creditors. Therefore, the trustee argues, DHHS's insistence on being paid by the buyer will ultimately harm Skyline's creditors.

The first question to be answered here is whether DHHS's recapture right is an "interest" in the property and whether the property can be sold free and clear of that interest. Section 363(f) permits the trustee to sell property of the estate free and clear of other interests if certain conditions exist:

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
    (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
    (2) such entity consents;
    (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
    (4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

DHHS's interest is its right to recapture depreciation paid in advance through Medicaid reimbursements to the debtor. A Virginia bankruptcy court addressed a similar fact scenario and determined that the state agency's right of recapture was an interest that could be satisfied through a monetary payment. *WBQ P'ship v. Virginia Dep't of Med. Assistance Servs. (In re WBQ P'ship)*, 189 B.R. 97 (Bankr. E.D. Va. 1995). That court stated:

> If the sale goes forward, DMAS's right of recapture will arise through a one-time transaction. In exercising this right, DMAS would collect a payment – either from the debtor or from the transferee . . . . The only threat confronting DMAS is the loss of money that would result from selling the assets free and clear of DMAS's interest. Accordingly, we conclude that DMAS's interest can be reduced to a claim, and is therefore subject to a hypothetical money satisfaction under 11 U.S.C. § 363(f)(5).
>
> . . . Because the right of recapture is neither a lien nor a right of setoff against the debtor, DMAS has at best an unsecured claim against the debtor.

*Id.* at 107.

The Virginia court then addressed the preemption argument, finding that the state statute conflicted with § 363(f):

> The plain terms of § 363(f) provide that a trustee or debtor-in-possession may sell estate property "free and clear of any interest in such property . . . ." The Virginia statute mandates the opposite result: if estate property is sold, and the debtor is unable to reimburse DMAS for the recaptured depreciation, DMAS may collect from the buyer, using "any means available by law . . . ." Va. Code § 32.1–329(C). In this respect, the Virginia statute creates an interest or charge on the property, even though the federal statute, § 363(f), authorizes the property to be sold free and clear of such interests. The Virginia statute thus interferes with the federal statute, and accordingly, the federal statute must prevail.
> . . .
> Section 32.1–329 of the Virginia Code contravenes the "free-and-clear" language by creating a statutory form of successor liability. Such a provision is sensible outside bankruptcy because it allows DMAS to provide depreciation reimbursements based on the nominal, historical price paid for the asset. Inside bankruptcy, however, DMAS must contend with the interests of other creditors who would be prejudiced by the effect of the Virginia statute. It is undisputed that the buyer . . . will not complete the sale if DMAS is allowed to exercise its right of recapture. If the sale is not consummated, the debtor will be left with two options. Initially, it could try to arrange another sale at a discounted price. Alternatively, it could permit the lienholders to sell the assets at foreclosure, at a price so distressed

>that DMAS's right of recapture would not be invoked. Either option would injure the other creditors – a result that the "free-and-clear" language is designed to avoid.

189 B.R. at 108-09 (citation omitted).

DHHS points out a distinction between *WBQ* and the present case in that Menomonee is not threatening to back out of the sale if the depreciation recapture must be repaid. Rather, there will be an escrow fund for this purpose, so the sale will go through, with the only question being the amount of proceeds available to the estate. However, I think that is a distinction without a difference. The end result is that the buyer would not have entered into the purchase agreement for the agreed-upon price without the indemnification fund.

Based on the *WBQ* analysis, the trustee seems to be taking two inconsistent positions. The DHHS recapture right under the state law arises, under the facts of this case, from the trustee's election to reject its Medicaid provider agreement as an executory contract. Such a rejection results in an unsecured, pre-petition claim. *See* 11 U.S.C. § 365(g)(1). So, the trustee argues that DHHS is nothing more than an unsecured claimant and allowing it to collect the recapture from the trustee or the buyer would turn the Bankruptcy Code's priority scheme upside down by allowing an unsecured creditor to collect its claim ahead of other similarly situated creditors. On the other hand, the trustee is arguing that the DHHS recapture right is an interest in property and the trustee can sell the property free and clear of that interest under § 363(f)(5) without paying anything to DHHS. I do not think the trustee can have it both ways.

On its face, § 363(f)(5) seems to be based on the premise that a trustee can sell property of the estate free of an interest by paying a monetary satisfaction of that interest. In other words, by forcing the interest holder to take a monetary satisfaction in lieu of keeping its interest in the property. *In re James*, 203 B.R. 449, 453-54 (Bankr. W.D. Mo. 1997); *In re Heine*, 141 B.R. 185, 189 (Bankr. D.S.D. 1992). Here, DHHS is fine with the sale being free and clear of its "interest" as long as its monetary satisfaction – the depreciation recapture – is paid. DHHS is also fine with a determination that it has a general unsecured claim upon rejection of its contract; that is, as long as it does not lose its right to collect the recapture from any new provider who wants a Medicaid provider agreement for the facility. The trustee, on the other hand, wants the benefits from both scenarios, without keeping the burdens.

Ultimately, I agree with the trustee and the *WBQ* court that the right of DHHS to recapture depreciation upon the change in the holder of a provider agreement is an interest in property as contemplated by 11 U.S.C. § 363(f)(5). As a result, the trustee can sell the property free of the DHHS recapture right as long as the trustee provides DHHS with a monetary satisfaction of its interest. The parties do not appear to agree on the dollar amount of that recapture interest, so I will leave that issue to be litigated, if necessary, another day. The rejection of the provider agreement by the trustee may result in some damages to DHHS that do not arise to the level of an interest in property such as the depreciation recapture, which damages would be general unsecured claims under 11 U.S.C. § 365(g)(1).

IT IS, THEREFORE, ORDERED that DHHS is entitled to collect its depreciation recapture under state law from the indemnification fund established or to be established as a result of the sale of the property and the change in the provider at the facility. I make no determination at this time as to the amount of the depreciation recapture, leaving that to the parties to negotiate or litigate. Notwithstanding that remaining issue as to the amount, I find that this is a final order for purposes of appeal as to the issue presented – the right of DHHS to collect its depreciation recapture.

DATED: December 17, 2014.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    Ronald L. Sanchez
    *Brandon R. Tomjack
    *T. Randall Wright
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.